CASIMER C. MARZEC and NYECO, INC., Plaintiffs v. FRANKLIN L. NYE, JR., and NYECO, INC., Defendants

No. COA08-1451

(Filed 16 March 2010)

**1. Corporations— derivative claim—shareholder—fiduciary duty**

Plaintiffs' complaint alleging breach of fiduciary duty and conversion of corporate property sufficiently alleged that plaintiff Marzec was a shareholder of Nyeco, Inc. and, therefore, that defendant Nye, as majority shareholder, owed a fiduciary duty to plaintiff.

**2. Statutes of Limitation and Repose— breach of fiduciary duty and conversion of corporate property—continuing wrong doctrine**

The trial court erred in determining that plaintiffs' complaint alleging breach of fiduciary duty and conversion of corporate property established that the claims were barred by the three-year statute of limitations. Plaintiff Marzec's claims based on defendant Nye's failure to pay plaintiff's salary and to provide an accounting were timely under the continuing wrong doctrine. The complaint did not contain allegations establishing that the statute of limitations had run on plaintiff's claims based on defendant's obtaining a personal loan in the company's name, payment of the loan from corporate funds, or usurping a corporate opportunity. Plaintiff's claim based on defendant's failure to produce corporate records was time-barred.

**3. Corporations— judicial dissolution**

The trial court erred in not ruling on plaintiff Marzec's request for judicial dissolution of Nyeco, Inc. pursuant to

**MARZEC v. NYE**

[203 N.C. App. 88 (2010)]

N.C.G.S. § 55-14-30(2) as plaintiff's complaint alleged at least two statutory grounds for dissolution.

Appeal by plaintiffs from order entered 6 August 2008 by Judge Jay D. Hockenbury in New Hanover County Superior Court. Heard in the Court of Appeals 7 May 2009.

*Dillow, McEachern & Associates, P.A., by Mary Margaret McEachern, for plaintiffs-appellants.*

*Shipman & Wright, LLP, by Gary K. Shipman, William G. Wright, and Matthew W. Buckmiller, for defendants-appellees.*

GEER, Judge.

Plaintiff Casimer C. Marzec, on behalf of himself and derivatively on behalf of Nyeco, Inc., appeals from the trial court's order dismissing his action against defendants Franklin L. Nye, Jr. and Nyeco, Inc. pursuant to Rule 12(b)(6) of the Rules of Civil Procedure. We disagree with the trial court's determination that the allegations of the complaint establish that plaintiffs' claims are barred by the statute of limitations and, therefore, we reverse. Further, we hold that the trial court erred in not addressing Marzec's request for judicial dissolution of Nyeco.

Facts

The complaint filed in this action alleges the following facts. Nye incorporated Nyeco, a closely held corporation, in North Carolina on 21 February 2002. Nyeco was in the business of providing floor maintenance and cleaning services for commercial accounts and distributing certain floor-cleaning and maintenance products.

On 24 March 2002, Nye and Marzec entered into the following agreement:

I, Frank L. Nye, agree to sell 25% of ownership in NYECO [I]nc. to Casimer Marzec in exchange for $50,000.00. I further agree to offer an option to buy additional shares in NYECO [I]nc. for a period of five years beginning at the time of this signed agreement. Future share prices will be determined when [the] option is exercised. They will be based on net revenues for the preceding 12 months. Net revenues times (3.5) shall be used to figure value of shares of NYECO [I]nc. at any future date. Total

additional shares available shall not exceed 20% of ownership in NYECO [I]nc.

The two men also entered into the following capital agreement:

I, Frank Nye, agree to pledge share purchase capital as follows. $20,000 shall remain in company as a loan for on going [sic] operating needs. $10,000 shall be placed in the bank and used as collateral for a line of credit. The remaining $20,000 shall be used to retire debt associated with NYECO [I]nc. prior to this agreement.

On 15 May 2002, Marzec and Nye conducted an annual shareholders meeting at which they elected Nye president and treasurer and Marzec vice president and secretary. The two men agreed that each would receive $4,000.00 a month as compensation for their roles in the company. The Nyeco business plan provided that Nye would handle sales and service calls, while Marzec would be responsible for the bookkeeping and other administrative matters.

The company's primary product, "Multi-Clean," was a new kind of floor coating that would maintain a high-gloss finish for longer periods of time than traditional floor coatings, thereby reducing the frequency of floor maintenance. In the summer of 2002, however, the Multi-Clean floor coating system was discovered to be defective, and Nyeco stopped selling the product.

According to the complaint, in September 2002, Nye unilaterally stopped making monthly payments to Marzec, although he continued to make monthly payments to himself. In March 2003, Nye obtained a personal loan in Nyeco's name and subsequently made payments on that loan using Nyeco funds. The complaint further alleges that in November 2003, Nye took a job with a competitor of Nyeco.

On 23 April 2004, Marzec sent Nye a letter requesting copies of Nyeco's corporate tax returns for fiscal years 2002 and 2003, a copy of Nyeco's corporate minute book, Marzec's share certificates, and $60,850.00 in back salary. The letter accused Nye of shutting Marzec out of the business beginning on 1 April 2004 and requested that Nye repurchase Marzec's shares for the sum of $47,541.00. Nye did not respond to the letter. In addition to the letter, Marzec made other unsuccessful attempts himself and through his attorney to resolve the dispute with Nye.

From 2005 through 2007, Marzec lived in Nevada. Although he received no actual income from Nyeco, Marzec was sent a Schedule

K-1 for the year 2006, stating that he had realized $20,000.00 in income from Nyeco. He also received a K-1 for the year 2007 stating that he had realized $5,000.00 in income from Nyeco for that year. As a result, Marzec had to pay $1,500.00 in taxes on income he never received.

On 4 June 2008, after Marzec returned to live in Wilmington, North Carolina, Marzec filed a complaint on behalf of himself and a shareholder derivative action on behalf of Nyeco against Nye and Nyeco. Marzec alleged claims for (1) fraudulent misrepresentation, (2) breach of fiduciary obligations, (3) conversion of corporate property, (4) breach of contract, and (5) default on a loan. In a final claim for relief, Marzec sought a decree of judicial dissolution. On 21 July 2008, Nye filed an answer and a motion to dismiss Marzec's claims pursuant to Rule 12(b)(6) of the Rules of Civil Procedure.

Following a hearing on 5 August 2008, the trial court entered an order on 6 August 2008 stating that defendants had moved "for a dismissal pursuant to Rule 12(b)(6) on the ground that . . . the pertinent statutes of limitations on the Plaintiffs' claims had expired and that the Plaintiffs' complaint did not state a claim for a default of a loan . . . ." The court noted that plaintiffs had voluntarily dismissed the claim for default of a loan and then allowed the motion to dismiss on the remaining claims based on the statute of limitations. Marzec timely appealed to this Court.

I

Marzec's first contention on appeal is that the trial court erred in dismissing his claims for breach of fiduciary duty and conversion of corporate property.[1] When reviewing an appeal from a motion to dismiss, " '[t]he question for the court is whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not.' " *Leary v. N.C. Forest Prods., Inc.*, 157 N.C. App. 396, 400, 580 S.E.2d 1, 4 (quoting *Grant Constr. Co. v. McRae*, 146 N.C. App. 370, 373, 553 S.E.2d 89, 91 (2001)), *aff'd per curiam*, 357 N.C. 567, 597 S.E.2d 673 (2003). "Documents attached as exhibits to the complaint and incorporated therein by reference are properly considered when ruling on a 12(b)(6) motion." *Woolard v. Davenport*, 166 N.C. App. 129, 133-34, 601 S.E.2d 319, 322 (2004).

---

1. Although Marzec also asserted claims for breach of contract and fraudulent misrepresentation, he did not assign error to the trial court's dismissal of those claims, and we, therefore, do not address them on appeal.

**[1]** Nye initially argues that Marzec's claims for breach of fiduciary duty and conversion of corporate property must fail because the complaint does not sufficiently allege that Marzec was a shareholder in Nyeco. We disagree. The complaint specifically alleges that Marzec is a 25% shareholder of Nyeco. Further, it alleges that on 24 March 2002, Nye and Marzec entered into an agreement in which Nye promised to convey to Marzec a 25% stock interest in Nyeco in exchange for $50,000.00. It also alleges that "Marzec and Nye conducted an annual shareholders' meeting wherein Nye was elected President and Treasurer, and Marzec was elected Vice President and Secretary." In addition, attached to Marzec's complaint are the minutes from the annual shareholders meeting, which stated that "[t]he company is presently owned by Mr. Franklin Nye and Mr. Casimer Marzec" and that "[t]he company stock consists of 100,000 shares of which there are 75,000 shares owned by Mr. Nye and 25,000 owned by Mr. Marzec."

Reading these allegations and the exhibits in the light most favorable to plaintiffs, *Kaleel Builders, Inc. v. Ashby*, 161 N.C. App. 34, 37, 587 S.E.2d 470, 473 (2003), *disc. review denied*, 358 N.C. 235, 595 S.E.2d 152 (2004), we hold that plaintiff sufficiently alleged that Marzec was a shareholder in Nyeco and, therefore, that Nye, as the majority shareholder, owed a fiduciary duty to Marzec. *See Farndale Co. v. Gibellini*, 176 N.C. App. 60, 67, 628 S.E.2d 15, 19 (2006) (" 'In North Carolina, it is well established that a controlling shareholder owes a fiduciary duty to minority shareholders.' " (quoting *Freese v. Smith*, 110 N.C. App. 28, 37, 428 S.E.2d 841, 847 (1993))).

Nye counters that under *Corp. Comm'n of N.C. v. Harris*, 197 N.C. 202, 203, 148 S.E. 174, 175 (1929), in order to be a shareholder, a party must show "not only that the stock ha[s] been issued, but that it ha[s] been actually or constructively accepted by the [party]." Nye argues that the demand letter shows Marzec was not a shareholder in Nyeco because, in the letter, Marzec asked Nye to give him the certificates for his shares. Nye contends that this request indicates that Marzec had not yet accepted the stock.

In *Powell Bros. v. McMullan Lumber Co.*, 153 N.C. 52, 55, 68 S.E. 926, 927 (1910) (internal quotation marks omitted), however, our Supreme Court recognized that "certificates are not necessary to membership in a corporation," explaining that "[i]t is the act of subscribing, or the registry of the stockholder's name upon the stock book of the company, opposite the number of shares for which he has subscribed, which gives him his title thereto, and that the certificate

neither constitutes his title nor is necessary to it, but only a memorial of it." *See also Meisenheimer v. Alexander*, 162 N.C. 227, 235, 78 S.E. 161, 164 (1913) (observing that stock certificate "is not the stock itself, but constitutes only *prima facie* evidence of the ownership of that number of shares"); *Weaver Power Co. v. Elk Mountain Mill Co.*, 154 N.C. 76, 78, 69 S.E. 747, 748 (1910) ("Stock is capital, and a stock certificate but evidences that the holder has ventured his means as a part of the capital."). Although these cases are dated, this is still the law in North Carolina. Thus, the fact that the share certificates were never given to Marzec does not require a conclusion that Marzec is not a shareholder.

**[2]** Turning to the basis for the trial court's order—that Marzec's claims are barred by the statute of limitations—it is well established that " 'when some fact disclosed in the complaint necessarily defeats the plaintiff's claim,' " then a trial court should dismiss the complaint under Rule 12(b)(6). *Carlisle v. Keith*, 169 N.C. App. 674, 681, 614 S.E.2d 542, 547 (2005) (quoting *Hooper v. Liberty Mut. Ins. Co.*, 84 N.C. App. 549, 551, 353 S.E.2d 248, 250 (1987)). Consequently, "[a] motion to dismiss under Rule 12(b)(6) is an appropriate method of determining whether the statutes of limitation bar plaintiff's claims if the bar is disclosed in the complaint." *Id.*

The parties agree that a three-year statute of limitations applies to both the claim for breach of fiduciary duty and the claim for conversion. *See Toomer v. Branch Banking & Trust Co.*, 171 N.C. App. 58, 66, 614 S.E.2d 328, 335 ("Allegations of breach of fiduciary duty that do not rise to the level of constructive fraud are governed by the three-year statute of limitations applicable to contract actions contained in N.C. Gen. Stat. § 1-52(1) (2003)."), *disc. review denied*, 360 N.C. 78, 623 S.E.2d 263 (2005); N.C. Gen. Stat. § 1-52(4) (2009) (providing three years to bring a suit "[f]or taking, detaining, converting or injuring any goods or chattels, including action for their specific recovery").[2]

Marzec alleges that Nye breached his fiduciary duty to Marzec by (1) ceasing to make monthly salary payments to Marzec and refusing to pay Marzec back pay, (2) refusing to comply with Marzec's request

---

2. We note that claims for breach of fiduciary duty that rise to the level of constructive fraud are subject to a 10-year statute of limitations. *See Babb v. Graham*, 190 N.C. App. 463, 480, 660 S.E.2d 626, 637 (2008), *disc. review denied*, 363 N.C. 257, 676 S.E.2d 900 (2009). Since Marzec does not specifically argue constructive fraud, nothing in this opinion should be deemed to address whether Marzec's complaint sufficiently alleged a claim for  constructive fraud or whether that claim would be barred by the statute of limitations.

for an accounting, (3) refusing to produce the company's business records, (4) taking out a personal loan in the company's name and making payments on that loan with company funds, and (5) usurping a corporate opportunity. Generally, a claim for breach of fiduciary duty accrues when the right to bring the claim arises. *Babb*, 190 N.C. App. at 481, 660 S.E.2d at 637.

With respect to the allegations relating to the payment of Marzec's salary and back pay and the request for an accounting, Nye contends that any claim accrued on 23 April 2004 when Marzec sent his demand letter to Nye requesting an accounting and back pay. Under this view, the statute of limitations would have run by the time the complaint was filed on 4 June 2008. Marzec argues, however, that his claim is timely under the continuing wrong doctrine.

"Our Supreme Court has recognized the continuing wrong doctrine as an exception to the general rule that a claim accrues when the right to maintain a suit arises." *Id.* Under the continuing wrong doctrine, the statute of limitations does not start running " 'until the violative act ceases.' " *Id.* (quoting *Williams v. Blue Cross Blue Shield of N.C.*, 357 N.C. 170, 179, 581 S.E.2d 415, 423 (2003)). For the continuing wrong doctrine to apply, the plaintiff must show " '[a] continuing violation' " by the defendant that " 'is occasioned by continual unlawful acts, not by continual ill effects from an original violation.' " *Id.* (quoting *Williams*, 357 N.C. at 179, 581 S.E.2d at 423). According to Marzec, Nye's refusal to pay him his salary and back pay and to provide him with an accounting amounted to a continuing violation.

In *Babb*, 190 N.C. App. at 480-81, 660 S.E.2d at 637-38, this Court applied the continuing wrong doctrine to the plaintiffs' claim for breach of fiduciary duty. The beneficiaries of a trust sued the trustee for breach of fiduciary duty, alleging that the trustee had refused to make required distributions under the trust. This Court held: "In the present case, [the beneficiaries] alleged, and [the trustee] testified, that [the trustee] continuously refused to make distributions under the trusts until he was removed as trustee on 3 June 2004. Therefore, [the trustee's] wrongful conduct, the refusal to make distributions, continued until he was removed as trustee on 3 June 2004." *Id.* at 481, 660 S.E.2d at 637. Accordingly, the Court concluded that the breach of fiduciary duty claims were not barred. *Id.*

In a case from New York, *Butler v. Gibbons*, 173 App. Div. 2d 352, 353, 569 N.Y.S.2d 722, 723 (1st Dept. 1991), the plaintiff alleged that

**MARZEC v. NYE**

[203 N.C. App. 88 (2010)]

the defendant had failed to pay the plaintiff his share of the rents on property the parties jointly owned. The court held that the trial court improperly concluded that the plaintiff's claims for breach of fiduciary duty were barred by the six-year statute of limitations because "Plaintiff's allegations clearly make out a continuing wrong, *i.e.*, Gibbons' repeated and continuing failure to account and turn over proceeds earned from renting the properties . . . ." *Id.* The court reasoned that "a new cause of action accrued each time defendant collected the rents and kept them to himself. . . . Plaintiff's action was therefore timely as to any such proceeds which were retained by defendant during the six years preceding the commencement of the action." *Id.* We find *Butler* persuasive authority with respect to the salary claims in this case.

Here, as in *Babb* and *Butler*, a cause of action for breach of fiduciary duty for failure to pay Marzec's salary accrued each time Nye failed to pay Marzec his monthly salary. Marzec's claim is, therefore, timely as to the failure to pay Marzec's salary and failure to provide an accounting during the three years preceding the filing of this action. *See Faulkenbury v. Teachers' & State Employees' Ret. Sys. of N.C.*, 345 N.C. 683, 695, 483 S.E.2d 422, 429-30 (1997) (holding, under continuing wrong doctrine, that plaintiffs were "allow[ed] . . . to pursue claims for underpayments for three years before they commenced actions"); *Sadov Realty Corp. v. Shipur H'Shechuna Corp.*, 202 App. Div. 2d 178, 179, 608 N.Y.S.2d 204, 204 (1st Dept.) ("The trial court also properly held that defendant's receipt and retention of rental proceeds was a continuing wrong that made the action for an accounting timely for up to six years prior to the commencement of the action . . . ."), *appeal dismissed*, 84 N.Y.2d 923, 621 N.Y.S.2d 521, 645 N.E.2d 1221 (1994).

With respect, however, to Marzec's theory that a breach of fiduciary duty occurred based on Nye's failure to produce corporate records, Marzec has not demonstrated the existence of a continuing wrong. Marzec made one request for the records on 23 April 2004. He has not demonstrated how the ongoing failure to respond to this request constituted continual unlawful acts as opposed to continual ill effects from the original failure to produce the records. *See Williams*, 357 N.C. at 179, 581 S.E.2d at 423.

Likewise, Marzec has failed to cite any authority, and we have found none, suggesting that the continuing wrong doctrine should apply to Marzec's allegations that Nye took out a personal loan in

Nyeco's name and converted corporate funds to make payments on that loan and that Nye usurped a corporate opportunity by taking a job with a competitor of Nyeco in November 2003. With respect to these breach of fiduciary duty allegations, however, our refusal to apply the continuing wrong doctrine does not necessarily mean that this aspect of Marzec's breach of fiduciary duty claim is barred by the statute of limitations.

With respect to the personal loan, in *Brown v. King*, 166 N.C. App. 267, 269, 601 S.E.2d 296, 297 (2004), this Court held that a plaintiff's claim for breach of fiduciary duty based on the defendant's obtaining a loan in the plaintiff's name accrued when the plaintiff discovered what the defendant had done. In this case, the complaint alleges that Nye took out the personal loan in March 2003, but does not allege when Marzec discovered this fact. The complaint does not, therefore, contain allegations establishing that this aspect of the fiduciary duty claim is barred by the statute of limitations.

As for the conversion of corporate funds, the statute of limitations for conversion generally begins running at the time a defendant asserts dominion over the property. *See White v. Consolidated Planning, Inc.*, 166 N.C. App. 283, 311, 603 S.E.2d 147, 165-66 (2004) (holding that plaintiff's claim for conversion of funds was barred by statute of limitations because "[t]he conversion occurred when Robert White exercised unlawful dominion over the funds—in other words, when Robert White withdrew the funds from the annuities without plaintiff's permission"), *disc. review denied*, 359 N.C. 286, 610 S.E.2d 717 (2005). *See also First Investors Corp. v. Citizens Bank, Inc.*, 757 F. Supp. 687, 690-91 (W.D.N.C. 1991) (observing that "[t]he general rule thus appears to be that conversion actions accrue upon the conversion itself rather than upon its discovery" and concluding that "the Plaintiffs' cause of action for each alleged conversion accrued at the time of that particular conversion"), *aff'd per curiam*, 956 F.2d 263 (4th Cir. 1992). Since the complaint in this case does not allege when Nye made the payments on the loan (the act exercising dominion over the funds), we again cannot determine from the allegations of the complaint that the conversion claim is barred by the statute of limitations. *See Benson v. Barefoot*, 148 N.C. App. 394, 396, 559 S.E.2d 244, 246 (2002) (holding that as neither complaint nor answer gave date on which alleged conversions took place, judgment on pleadings was improper).

Finally, this Court held in *Lowder v. All Star Mills, Inc.*, 75 N.C. App. 233, 235, 330 S.E.2d 649, 651, *disc. review denied*, 314 N.C. 541,

335 S.E.2d 19 (1985), that the statute of limitations for a breach of fiduciary duty based on usurping a corporate opportunity does not begin to run until the plaintiff becomes aware that the defendant usurped a corporate opportunity. Thus, Marzec's claim alleging a breach of fiduciary duty through usurping a corporate opportunity started running when Marzec discovered, or should have discovered, that Nye was working for a competitor.

Nye contends this date was 23 April 2004, when Marzec sent the letter to Nye demanding an accounting, records, his share certificates, and back pay. The 23 April 2004 letter does not, however, say anything about Nye's going to work for a competitor or in any way indicate that Marzec had discovered this fact. In the absence of any allegation in the complaint as to when Marzec discovered or should have discovered that Nye was working for a competitor, there is no basis for dismissing this aspect of Marzec's breach of fiduciary duty claim. *See Benson*, 148 N.C. App. at 396-97, 559 S.E.2d at 246.

In sum, under the continuing wrong doctrine, the trial court erred in dismissing Marzec's claim for breach of fiduciary duty based on the failure to pay his salary and for an accounting for the three years preceding the filing of Marzec's complaint. Further, the complaint does not contain allegations establishing that the statute of limitations has run as to the breach of fiduciary duty claims based on Nye's obtaining a personal loan in the company's name, payment of the loan from corporate funds, and usurping a corporate opportunity. The trial court did not err, however, in concluding that the statute of limitations had run to the extent the breach of fiduciary duty claim is based on the failure to produce corporate records.

II

[3] Marzec also argues that the trial court should have ruled on his application to dissolve the corporation. Pursuant to N.C. Gen. Stat. § 55-14-30(2) (2009), a shareholder may seek to have a corporation dissolved by the superior court

if it is established that (i) the directors or those in control of the corporation are deadlocked in the management of the corporate affairs, the shareholders are unable to break the deadlock, and irreparable injury to the corporation is threatened or being suffered, or the business and affairs of the corporation can no longer be conducted to the advantage of the shareholders generally, because of the deadlock; (ii) liquidation is reasonably necessary

for the protection of the rights or interests of the complaining shareholder; (iii) the shareholders are deadlocked in voting power and have failed, for a period that includes at least two consecutive annual meeting dates, to elect successors to directors whose terms have expired; (iv) the corporate assets are being misapplied or wasted; or (v) a written agreement, whether embodied in the articles of incorporation or separate therefrom, entitles the complaining shareholder to liquidation or dissolution of the corporation at will or upon the occurrence of some event which has subsequently occurred, and all present shareholders, and all subscribers and transferees of shares, either are parties to such agreement or became a shareholder, subscriber or transferee with actual notice thereof[.]

If grounds exist under N.C. Gen. Stat. § 55-14-30(2) for dissolution, "the decision to dissolve the corporation is within the trial court's sound discretion." *Royals v. Piedmont Elec. Repair Co.*, 137 N.C. App. 700, 704, 529 S.E.2d 515, 518, *disc. review denied*, 352 N.C. 357, 544 S.E.2d 548 (2000).

In his complaint, Marzec alleged that Nye and Marzec were "unable to agree upon the proper and reasonable management of Nyeco's affairs" and that "[a]s a result, it [was] not reasonably practicable to carry on the business of Nyeco in conformity with its governing documents, agreements between the shareholders, and applicable law." The complaint further alleged that "corporate assets [were] being misapplied and wasted by Nye, that Nye ha[d] through other actions and inactions breached his duties to Marzec, that Nye refuse[d] to communicate with Marzec and that judicial dissolution [was] reasonably necessary in order to protect Marzec's rights and interests."

These allegations are sufficient to allege the existence of at least two statutory grounds for dissolution. *See* N.C. Gen. Stat. § 55-14-30(2)(i) & (iv). Even though a decision regarding Marzec's request for dissolution lay within the trial court's discretion, the trial court nonetheless was required to rule one way or the other on that request for dissolution. *See Poore v. Swan Quarter Farms, Inc.*, 119 N.C. App. 546, 550-51, 459 S.E.2d 52, 54-55 (1995) (agreeing with plaintiffs that trial court erred in failing to conduct evidentiary hearing to resolve plaintiffs' request for judicial dissolution and remanding for such a determination). The trial court, therefore, erred in granting the motion to dismiss on statute of limitations grounds without ruling on Marzec's request for judicial dissolution.

Reversed and remanded.

Judges BRYANT and STEPHENS concur.